UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY KELLEY,<br><br>    Petitioner,<br><br>    v.<br><br>PAUL THOMPSON, et al.,<br><br>    Respondents. | No. 2:21-cv-1813 JAM KJN P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a federal prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges certain Bureau of Prisons ("BOP") policies regarding the First Step Act and the BOP's application of the Act to its determination of his release date.

Pending before the court is respondent's motion to dismiss, and motion for injunctive relief. (ECF Nos. 8, 11.) For the reasons stated herein, the undersigned recommends that respondent's motion to dismiss be granted, and petitioner's motion for injunctive relief be denied.

Background

On December 20, 2017, a jury found petitioner guilty. United States v. Kelley, No. CR15-5198 RBL (W.D. Wash.) (ECF No. 556).[1] On June 29, 2018, petitioner was sentenced to 12

---

[1] A court may take judicial notice of court records. See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both

1

months and one day in federal custody by the United States District Court for the Western District of Washington. (ECF No. 8-1 at 2.) He was convicted of possession and concealment of stolen property (count one), false declarations (counts 2 and 5), and filing false income tax returns (counts 12 - 15 & 17). Kelley, No. CR15-5198 RBL (ECF No. 681.) Following various post-trial motions, it appears petitioner self-surrendered at Federal Correctional Institute Herlong on June 30, 2021. Kelley, No. CR15-5198 RBL (ECF No. 726).

Petitioner's full-term completion date is May 6, 2022. (ECF No. 8-1 at 15.) Because the BOP has not completed the phase-in, the award of credits has not yet been calculated, and thus respondent could not calculate the credits or predict the exact impact such credits might have on petitioner's putative pre-release. (ECF No. 8-1 at 11.)

On October 1, 2021, petitioner filed the pending habeas corpus petition pursuant to 28 U.S.C. § 2241 seeks an order awarding declaratory relief, as follows:

> (1) directing BOP to immediately credit all work, and credit all education programming earned after the legislation was enacted toward early release; 2) void BOP directives (statements and handbooks too) that directly contradict the legislative intent; and (3) calculate petitioner's days of credit and order BOP to credit those days toward early release and if such date has passed to immediately release the prisoner without the nonsensical 21-day outgoing quarantine period in disciplinary solitary confinement when moving from a BOP classified covid-free prison to general society where the virus is present.

(ECF No. 1 at 6.) If the Court decides such relief is premature before January 15, 2022, petitioner asks for such declaratory relief on January 16, 2022. (Id.)

On September 24, 2021, respondent warden filed the pending motion to dismiss. (ECF No. 10.) Respondent moves to dismiss the petition for lack of Article III standing and ripeness, lack of jurisdiction under 28 U.S.C. § 2241 and for failure to exhaust administrative remedies. (Id.)

On September 1, 2021, petitioner filed an opposition to the motion to dismiss. (ECF No. 9.)

---

within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).

Discussion

*The First Step Act*

The First Step Act was signed into law on December 21, 2018. Pub. L. No. 115-391, 132 Stat. 5194 (2018). The relevant portions of the First Step Act allow eligible prisoners to earn time credits against their sentences for successfully completing certain "recidivism reduction programming" or "productive activities." 18 U.S.C. § 3632(d)(4). The Attorney General was allowed 210 days after the First Step Act was enacted to develop and publish the Risk Assessment Needs system, which the Bureau of Prisons ("BOP") must use as a guide to implement the programs. 18 U.S.C. § 3632(a). The Attorney General published the Risks and Needs Assessment on July 19, 2019. The BOP then had 180 days, or until January 15, 2020, to implement the system, complete inmate risk assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs. 18 U.S.C. § 3621(h).

Thereafter BOP was given an additional two years, or until January 15, 2022, to phase in programming and provide "evidenced based recidivism reduction programs and productive activities for all prisoners." 18 U.S.C. § 3621(h)(2)(A-B). Moreover, during this "phase-in" period, the BOP was empowered to exercise its own discretion as to how and when to expand programs and activities, as well as offer the system's incentives and rewards as of the date of enactment of the First Step Act:

> Beginning on the date of enactment of this subsection, the Bureau of Prisons *may* begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and *may* offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.

§ 3621(h)(4) (emphasis added).

*Ripeness*

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hosp. Ass'n v. Dep't of the Interior, 538 U.S. 803, 808 (2003) (quoting Reno v. Cath. Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993)). It "is to prevent the courts, through premature adjudication, from entangling

3

themselves in abstract disagreements" when those disagreements are premised on "contingent future events that may not occur as anticipated, or indeed may not occur at all." Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985) (citations omitted); Wolfson v. Brammer, 616 F.3d 1045, 1057 (9th Cir. 2010); see also Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003) (evaluating ripeness in the context of a habeas petition, stating "[p]rudential ripeness is ... a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination ").

The majority of courts that have considered claims regarding the BOP's alleged failure to award earned time credits under the First Step Act have concluded that these claims are not ripe at this time because the BOP has until January 15, 2022, to "phase-in" the evidence-based recidivism programs and productive activities for all prisoners. Khouanmany v. Gutierrez, 2021 WL 4394591, at *4 (C.D. Cal. Aug. 2, 2021) ("The majority of courts to have considered claims regarding the BOP's failure to award earned time credits under the First Step Act have concluded that such claims are not ripe at this time because the BOP has until January 15, 2022, to "phase-in" the evidence-based recidivism reduction programs and productive activities for all prisoners.") (citing Novotny v. Yankton FPC, Warden, 2021 WL 3089287, at *1 (D. S.D. July 21, 2021) (inmates do not have standing to seek an order requiring the BOP to apply earned time credits toward prerelease custody before January 15, 2022); Diaz v. Warden, FCI-Ray Brook, 2021 WL 3032694, at *2-3 (N.D. N.Y. July 19, 2021) (challenge to BOP's calculation of earned time credit under the First Step Act was not ripe for review); Hand v. Barr, 2021 WL 392445, at *5 (E.D. Cal. Feb. 4, 2021) ("because the Act does not require BOP to provide evidence-based recidivism reduction programs and productive activities for all prisoners until January 2022, the Court finds that petitioner's claims regarding earned time credits and evidence-based recidivism reduction programs are not ripe"), findings and recommendation adopted by 2021 WL 1853295, at *2 (E.D. Cal. May 10, 2021) (given that the regulations governing the First Step Act time credits have yet to be codified, the court agreed that the petitioner's claims regarding First Step Act time credits were not ripe); Cohen v. United States, 2021 WL 1549917, at *3 (S.D. N.Y. Apr.

20, 2021) (claims challenging calculation of earned time credits under the First Step Act was not ripe); Kennedy-Robey v. FCI Pekin, 2021 WL 797516, at *3-4 (C.D. Ill. Mar. 2, 2021) ("The use of the word 'may' indicates that, while it is permissible for the BOP to award time credits under the statute at any time after the date of enactment, the BOP is not required to do so"; thus, the petitioner did not have standing to demand that the BOP apply her time credits as she calculated)); Fair v. Thompson, 2022 WL 183429 (E.D. Cal. Jan. 20, 2022) (challenges to certain BOP policies regarding the First Step Act and the BOP's application of the Act dismissed as unripe).

The undersigned agrees with the reasoning of the courts cited above and finds that petitioner's claims are not ripe. Once the Bureau of Prisons has applied First Step Act credits or failed to properly apply such credits, petitioner may file a new petition for relief.

In the petition, petitioner cites Goodman v. Ortiz, 2020 WL 5015613 (D.N.J. Aug. 25, 2020), where the district court found that the BOP need not wait until January 15, 2022, to implement the at-issue sections of the First Step Act. However, the undersigned joins the numerous courts that have respectfully disagreed with the Goodman decision. Diaz v. Warden, 2021 WL 3032694, at *2-3 (N.D. N.Y. July 19, 2021) (acknowledging Goodman but noting that the majority of courts disagree with that opinion); Holt v. Warden, 2021 WL 1925503, at *5 (D. S.D. May 13, 2021) (collecting cases that have disagreed with the Goodman opinion); Kennedy-Robey, 2021 WL 797516, at *4 (C.D. Ill. March 2, 2021) ("If immediate implementation were mandated, Congress would have used the word 'shall' and not 'may' in 18 U.S.C. § 3621(h)(4)).

*Exhaustion*

Respondent also argues petitioner must first exhaust his administrative remedies before bringing a federal action. There is some disagreement among the district courts as to whether exhaustion of a claim for time credits under the First Step Act is required prior to suit. Compare Goodman v. Ortiz, 2020 WL 5015613, at *3 (exhaustion not required), with O'Bryan v. Cox, 2021 WL 983241 at *1-3 (D. S.D. Jan. 12, 2021) (exhaustion required). Because the court finds that the instant petition is not ripe and must be dismissed, it declines to address the exhaustion argument at this time.

*Remaining Claims*

Because the undersigned finds that petitioner's claims are not ripe, there is no need to address the other grounds raised in respondent's motion to dismiss, or petitioner's motion for hearing.

<u>Motion for Preliminary Injunction</u>

In his motion, petitioner raises myriad issues concerning conditions of confinement at Herlong which are not pertinent to his own instant habeas petition. For example, he claims he notified this court that the Department of Justice failed to serve 18 of the first 20 answers to § 2241 petitions from Herlong concerning the First Step Act but does not allege he did not receive respondent's opposition. (ECF No. 11 at 1.) Petitioner complains that he recently received documents from the respondent's counsel, despite counsel's failure to include petitioner's prisoner number, which petitioner suggests was done "in furtherance of some DOJ [Department of Justice]-concocted 'scheme' the centerpiece of an absurd felony wire fraud predicate to money laundering charges." (ECF No. 11 at 2.) After the DOJ and respondent's counsel received documents in another First Step Act case, another inmate at Herlong "was interrogated and threatened with an additional five years in prison by the Special Investigative Service in an isolated room at the medium security facility." (ECF No. 11 at 2.) Petitioner contends that retaliation is common at Herlong and occurs when prisoners request medical treatment or access to the courts. Another prisoner, lead volunteer with the chaplain for religious support for all prisoners at prison camp, was "hauled off to the Hole to spend Christmas and New Years Day alone." (ECF No. 11 at 2.)

In addition, "[t]he prison system of DOJ continues to open envelopes that are clearly marked 'confidential legal mail' and 'open in presence of prisoner.'" (ECF No. 11 at 2-3.) Since this litigation began, multiple family visits have been cancelled, at great expense financially and emotionally; on November 30, 2021, the prison phone system was switched such that family members cannot hear prisoners talk on the phone; less than 50% of the words come through. (ECF No. 11 at 3.) Since the habeas petitions were filed, medical and dental care has been withdrawn to almost zero. Prisoners with serious medical conditions are unable to get blood

draws, those over 55 cannot get colonoscopies, and one prisoner who lost his crown has been unable to obtain dental care to have the crown put back on his tooth. Petitioner ends by claiming that counsel for respondent called Herlong in December "to punish a prisoner accessing the court," purportedly following actions of former Deputy Attorney General Andrew Weissmann, who put "an innocent mid-level Merrill Lynch family man in the Hole for months, "hoping to emulate his success within DOJ and obtain future political payoffs in the private sector. (ECF No. 11 at 5.)

As to petitioner, he has been unable to see his counselor in months, which precludes petitioner's ability to exhaust his administrative remedies. The education department has zero prisoner employees since early October, even though it should be implementing the First Step Act. Petitioner claims education is nonexistent at Herlong. The few courses he was allowed to take did not show up in SENTRY, the Inmate Copy Team Sheet, or the Educational Transcripts.

Petitioner applied for prison work from July 2021 to January 2022, without success, and notes that DOJ policy states that no prison work (not HVAC nor teaching) at Herlong will qualify for First Step Act early release credit because it is not for private contractor Unicor. When asked, the Camp Administrator responded:

> During covid there will be no (education) programming. This is a work camp and all prisoners are required to work and of course will get [First Step Act] credit. Programming is for prisoners behind the fence. . . . the next question will be answered in the SHU (the Hole).

(ECF No. 11 at 3.) Petitioner inquires if petitioner is wrongfully prevented from working, is there any mechanism for early release credit to be granted? If a prisoner works every possible workday during the month (21-23 days), will he be granted one month's work credit resulting in 10-15 early release credit? Why should it take prisoners 40 day to achieve one month worked when it only takes DOJ and court employees 30 days to receive a month's pay and benefits? (ECF No. 11 at 4.)

In addition, petitioner argues that Herlong administrators are imposing second world war group punishment, claiming that the entire prison camp is punished until prisoners talk. For example, weeks went by in October and November when Warden Thompson and Camp

1  Administrator Alatary cancelled all work and education programs and restricted all prisoners to
2  their inside bunk area.  Not even five minutes of exercise was permitted; TVs were turned off,
3  and access to the library was prohibited.  Prisoners were fed bologna twice every day with one
4  hot meal served every 72 hours.  During part of this time, plumbing was broken such that one
5  urinal was available for 90 prisoners, and it could not be used for any purpose other than urine.
6  No individual punishment was meted out; rather, the entire group was punished the entire time.
7  (ECF No. 11 at 4.)

Petitioner contends that the described conditions cry out for an unannounced visit by an Eastern District of California judge, and personally invited U.S. District Judge Mendez and the entire Court and its staff to see the prison.  Petitioner notes that former Washington Supreme Court Justice Richard Sanders took every opportunity to inspect state prisons unannounced to confirm they complied with the law.  Such a tour would reveal that every seat in the dining hall and TV area, all jobs, and the physical workout times are strictly segregated, and always have been.  Petitioner avers that despite the desegregation of the military, schools, and other parts of society, the DOJ and the courts are happy to enforce racial discrimination and segregation "upon its most impressable citizens with no voice in our society."  (ECF No. 11 at 5.)

Further, petitioner argues that this case should be consolidated with all the other cases filed by inmates at Herlong, as the court did in Cazeres v. Hendrix, 2021 WL 5921367 (D. Ore. Dec. 15, 2021).

Standards

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Glossip v. Gross, 135 S. Ct. 2726, 2736-37 (2015) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  "Under Winter, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

////

Discussion

First, petitioner's motion does not meet the standards required under Winter. He addresses conduct that is not a subject of this action, and therefore does not demonstrate either a likelihood of success on the merits or a serious question on the merits of the claims raised herein. Rather, as set forth above, it is recommended that this action be dismissed.

Second, petitioner lacks standing to seek relief on behalf of other inmates. "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Kowalski v. Tesmer, 543 U.S. 125, 129 (2004) (internal quotation marks omitted); see Blaisdell v. Frappiea, 729 F.3d 1237, 1244 (9th Cir. 2013) ("For there to be a judicially cognizable injury, 'the party before [the court] must seek a remedy for a personal and tangible harm.'") (quoting Hollingsworth v. Perry, 570 U.S. 693, 704 (2013) (alteration and emphasis in original).

Third, allegations concerning conditions of confinement generally must be pursued through the prison administrative process and then litigated in a separate action. See McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam), and Rhodes v. Robinson, 621 F.3d 1002, 1004-07 (9th Cir. 2010) (together holding that claims must be exhausted prior to the filing of the original or supplemental complaint); Jones v. Felker, No. CIV S-08-0096 KJM EFB P, 2011 U.S. Dist. LEXIS 13730, at *11-15, 2011 WL 533755 (E.D. Cal. Feb. 11, 2011).

Fourth, it is unclear from this filing whether petitioner may be able to bring a civil rights action as to some of his claims. The case of Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 396 (1971), "established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980). The Supreme Court has recognized a Bivens claim in only three cases: Bivens (Fourth Amendment unreasonable search and seizure); Davis v. Passman, 442 U.S. 228, 248-49 (1979) (Fifth Amendment Due Process Clause gender discrimination); and Carlson v. Green, 446 U.S. 14, 17-19 (1980) (Eighth Amendment inadequate medical treatment). "These three cases -- Bivens, Davis, and Carlson --represent the only instances in which the [Supreme] Court has

approved of an implied damages remedy under the Constitution itself." Ziglar v. Abbasi, 137 S. Ct. 1843, 1855 (2017).  The Supreme Court made clear that "expanding the Bivens remedy is now a 'disfavored' judicial activity," and such a remedy will not be available if there are "'special factors' counseling hesitation in the absence of affirmative action by Congress." Ziglar, 137 S. Ct. at 1848 (citation omitted).  The only relief available in a Bivens action is an award of money damages for injuries caused by a defendant acting in his or her individual capacity.  Ministerio Roca Solida v. McKelvey, 820 F.3d 1090, 1093-96 (9th Cir. 2016) (holding relief under Bivens does not encompass injunctive and declaratory relief where the equitable relief sought requires official government action).

Finally, where circumstances warrant, the court has authority in extraordinary cases to intervene regarding conduct unrelated to the case's claims under The All Writs Act.  That Act gives federal courts the authority to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. 1651(a). The United States Supreme Court has authorized the use of the All Writs Act in appropriate circumstances against persons who, "though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." United States v. N.Y. Tel. Co., 434 U.S. 159, 173-74 (1977).  To obtain an order under the All Writs Act, the requested order must be "necessary."  This language requires that the relief requested is not available through some alternative means.  Clinton v. Goldsmith, 526 U.S. 529, 537 (1999).

Petitioner's claims concerning the conditions of confinement, if true, are very troubling. However, the allegations pertinent to petitioner do not present an emergency warranting the extraordinary remedy of an emergency restraining order under the All Writs Act.  Petitioner has not alleged specific facts that demonstrate an extraordinary remedy of an emergency restraining order under the All Writs Act is necessary here.

Therefore, the undersigned recommends that petitioner's motion be denied without prejudice to any civil rights action petitioner might file in the future.

////

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (ECF No. 8) be granted on the grounds that petitioner's claims are not ripe.

2. Petitioner's motion for injunctive relief (ECF No. 11) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 11, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/kell1813.mtd.2241.FSA.pi